■ ARCHBISHOPRIC OF THE CITY OF NEW YORK, Respondent, v CITY OF NEW YORK et al., Appellants. (Action No. 1.) LITTLE ANTIGONE THEATRES, INC., Respondent, v CITY OF NEW YORK et al., Appellants. (Action No. 2.) — Judgment, Supreme Court, New York County (Ascione, J.), entered June 3, 1980 after a nonjury trial in favor of the plaintiff Archbishopric of the City of New York (Archbishopric) in the sum of $107,922.05, plus interest and costs, unanimously modified, on the law and facts, to reduce the amount of the judgment to $97,922.05, plus interest and costs, and otherwise affirmed, without costs. Judgment, Supreme Court, New York County (Ascione, J.), entered January 5, 1981 after a nonjury trial in favor of the plaintiff Little Antigone Theatres, Inc. (Antigone), in the sum of $172,077.95, plus interest and costs, unanimously modified, on the law and the facts, to reduce the amount of the judgment to $65,577.95, plus interest and costs, and otherwise affirmed, without costs. The judgments appealed from were granted to the plaintiffs against the City of New York by reason of the improper demolition of premises 225-227 East 13th Street, New York City, by the City of New York. The property, originally owned by the Archbishopric, was improved by a one-story brick and stone church building which was sold by the Archbishopric to Antigone on December 23, 1969, for the sum of $155,000, of which $120,000 consisted of a purchase money mortgage. On May 19, 1970, the Board of Standards and Appeals granted Antigone's application to convert the property to a theatre conditioned on "substantial construction be[ing] completed within one year from the date" of the resolution. Renovation work began in 1970 and continued through the beginning of 1972. In June, 1972 the city demolished the building upon the ground that it was a nuisance and unsafe. No notice of the intention to demolish was ever served upon the Archbishopric, the

mortgagee. In April, 1972, a notice addressed to Antigone was served on respondent Harry Joe Brown, Jr. (Brown), the president of Antigone, asserting that the building was unsafe and required to be removed or made safe. Brown allegedly called the department of buildings and stated that the premises were not in a deteriorating condition and there were then pending negotiations with the Department of Health to establish a methadone clinic on the premises. It is conceded by the city that although unsafe building reports were filed respecting the building, the usual "unsafe building procedures" of ordering a survey and issuing a'precept on notice preliminary to obtaining a Supreme Court order to demolish a building declared to be unsafe were not followed. The Archbishopric, the mortgagee of record, was not notified. The city urged that the building was a nuisance and therefore susceptible of summary demolition. However, the record is clear that substantial periods of time were allowed to elapse between the filing of the notice and the letter notice to Brown and the actual demolition. No notice of the actual demolition was served on anyone. After a nonjury trial of both cases together, in which it appeared that the city's own records with respect to the inspection of the premises were inconsistent with each other and had been altered, Trial Term concluded that judgment should be granted in favor of the plaintiffs against the city upon the ground that the city had not established that the building was a nuisance requiring summary demolition, or that appropriate notice had been served. It was found that the unsafe building procedures which would result in a Supreme Court order directing demolition were not utilized. When the case was here previously on appeal from a summary judgment in favor of the city, this court, reversing (63 AD2d 912), directed a trial to determine whether the premises consisted of a nuisance. As defined in section 564-15.0 of the New York City Administrative Code: "The word 'Nuisance', shall be held to embrace public nuisance, as known at common law or in equity jurisprudence; whatever is dangerous to human life or detrimental to health; whatever building or erection, or part or cellar thereof, is overcrowded with occupants, or is not provided with adequate ingress and egress to or from the same or the apartments thereof, or is not sufficiently supported, ventilated, sewered, drained, cleaned or lighted in reference to its intended or actual use; and whatever renders the air or human food or drink, unwholesome. All such nuisances are hereby declared illegal." The plaintiffs have established by a fair preponderance of the evidence that the building was not a nuisance, that there was no immediate peril and that summary demolition was improper. We agree with Trial Term that the city is liable therefor. Thus the only issue remaining on this appeal is damages. As noted, the premises were sold to Antigone for $155,000. Evidence upon the trial was to the effect that subsequent electrical and plumbing work cost a total of $70,500. In 1976 plaintiff's expert, John O'Malley (O'Malley), valued the property as of 1972 at $140,000, including land value of $26,500. However, on the trial O'Malley stated that that valuation did not encompass the improvements and expenditures by Antigone. He now valued the property as a theatre at $300,000, allotting $26,500 to the land. In his opinion, had the property been fully renovated and operated as a theatre, he would have valued it at over $400,000. This valuation was in part, at least, arrived at by taking the proposed rental of the church as a methadone clinic at $45,000 per year and capitalizing it at the rate of seven times the annual rental. This capitalization method was apparently accepted by the trial court who fixed the value of the property at $300,000. We disagree. The capitalization was based upon the hypothetical rental of a completed building — pure speculation — rather than on a going-concern rate. The current evaluation should have been considered in the light of the same expert's relatively recent written appraisal for $140,000, inclusive of land. The only other evidence of

value before the trial court consisted of a report prepared by O'Malley, listing comparable sales as well as improved property in the area — two other improved premises were sold at $100,000 and $76,000, respectively. The city's expert valued the property at $85,000. Plainly the wide disparity demonstrates the problem of attempting to evaluate a church, a specialized building, being converted for some other use in a declining neighborhood. It would appear that the most realistic appraisal would be $155,000, increased by a portion of the value of the improvements. We have concluded that a fair value of the property is $200,000. The $200,000 value includes $26,500, the valuation of the land by plaintiff's expert, which we accept. Since the land remained after the demolition as the property of Antigone, it cannot recover for that portion of the valuation. The balance due on the mortgage at the time of the demolition was $107,922.05. The expert's testimony was that the value of the mortgage was substantially impaired by reason of the demolition of the building and he fixed its value as an impaired lien in the sum of $10,000. Since this is the only evidence in the record of the value of the lien after the demolition, that amount should be deducted from the balance due on the mortgage. Accordingly, the Archbishopric is entitled to recover the sum of $97,922.05 and the judgment in favor of the Archbishopric should be modified to that extent, and we so direct. Antigone is entitled to recover the sum of $65,577.95, representing the valuation of the premises at $200,000, less the balance due on the mortgage and less the value of the land. Accordingly the judgment in favor of Antigone should be reduced to $65,577.95, together with interest and costs, and we so direct. The fact that the city subsequently acquired the property in an in rem foreclosure for failure to pay taxes does not inure to the benefit of plaintiffs. Nor does it relieve the city from the obligation to pay the damages due to the unlawful demolition. Concur — Kupferman, J. P., Sullivan, Markewich, Bloom and Fein, JJ.