716 F.2d 982
 Elvira BURTNIEKS, Plaintiff-Appellant,
v.
The CITY OF NEW YORK, a municipal corporation, George C.
Sakona, Ernest Cocolicchio, Irving Minkin, Cornelius F.
Dennis, Frank Juliano, Michael Weiner, Alexander Perciballi,
Ronald Silvers and BC Enterprises, Inc., a corporation,
"John Doe," "Richard Roe," and "Jane Doe," names being
fictitious, parties intended being persons or corporations
who collaborated with or acted in concert with the
aforenamed defendants or any one or more of them with
respect to the subject matter of this action, Defendants-Appellees.
 No. 757, Docket 82-7733.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 26, 1983.
Decided Aug. 26, 1983.
 
 Joseph P. Giasi, Jr., New York City (Alexander L. Caccia, John Anthony Smith, Turk, Marsh, Kelly & Hoare, New York City, of counsel), for plaintiff-appellant.
 Francis F. Caputo, New York City (Frederick A.O. Schwarz, Jr., Corporation Counsel of the City of New York, Barry I. Berger, New York City, of counsel), for defendants-appellees City of New York and City Employees.
 Richard Imbrogno, New York City (Gordon & Shechtman, P.C., New York City, of counsel), for defendant-appellee BC Enterprises, Inc.
 Before VAN GRAAFEILAND, PIERCE and WINTER, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Elvira Burtnieks appeals from a decision of the United States District Court for the Southern District of New York, Henry F. Werker, Judge, entered August 30, 1982, granting appellees' motion for summary judgment and dismissing appellant's claim that appellees had deprived her of her property without due process of law in violation of 42 U.S.C. Sec. 1983 (Supp. III 1979)[1] "on the merits as against all defendants without prejudice to [her] right ... to assert any other claims [against appellees] in any appropriate forum." Appellant's pendent state claims were also dismissed. Specifically, appellant alleges that the City of New York and certain municipal employees wrongfully ordered the demolition of a five-story building, located at 221 East 95th Street, New York, New York, which she owned, and that BC Enterprises, Inc., a corporation organized under the laws of the State of New Jersey, wrongfully performed the demolition of the building. It is alleged in the complaint that these actions were taken without complying with the notice provisions of the Administrative Code of the City of New York, and thus "deprived [appellant] of the use and value of the subject premises, and of the business opportunity to develop and promote the same to her financial advantage." The issue addressed on this appeal is whether the district court erred in granting summary judgment in favor of appellees, thereby dismissing appellant's complaint in which she alleged a deprivation, under color of state law, of personal and property rights secured to the appellant by the 14th Amendment to the United States Constitution. For the reasons set forth below, we reverse the grant of summary judgment and remand for further proceedings.
 
 I. Facts Asserted
 
 2
 As a preliminary matter, we note that under Fed.R.Civ.P. 56, factual allegations in the pleadings of the party opposing the motion for summary judgment, if supported by affidavits or other evidentiary material, should be regarded as true by the district court. First National Bank of Cincinnati v. Pepper, 454 F.2d 626, 629 (2d Cir.1972). The following account sets forth the facts as asserted by appellant Burtnieks in her complaint and supporting materials.
 
 
 3
 Defendant-appellee The City of New York (the City) is a municipal corporation existing under the laws of the State of New York. Defendant-appellee BC Enterprises, Inc. (BC) is a corporation organized under the laws of the State of New Jersey and apparently performs demolition work. All of the remaining defendants-appellees are employees of the City (City Employees) and specifically of the Housing and Development Administration, Department of Buildings, Borough of Manhattan, New York City.
 
 
 4
 On or before November 3, 1958, appellant acquired fee ownership of the premises known as 221 East 95th Street, New York, New York, including a 25 X 100 foot lot with a five-story building thereon containing 10 apartments. Appellant's real estate taxes assessed against this property went unpaid for a period of time. On May 25, 1978, the City acquired title to the subject premises as the result of a tax lien foreclosure in rem. However, under Sections D17-12.0 and D17-25.0 of the Administrative Code of the City of New York (Administrative Code), the property interest so acquired by the City was expressly subject to appellant Burtnieks' right to redeem title to the property by complying with applicable Code provisions. Burtnieks applied to have the interest released; the application was processed; and on December 27, 1978, Burtnieks and the Department of General Services, Division of Real Property of the City of New York entered into an agreement whereby Burtnieks was to make certain payments to the City to obtain the release. Upon completion of the payments, the judgment of foreclosure in the in rem proceeding and the deed vesting title to the premises in the City would be vacated. Thus, under the agreement, Burtnieks had a reversionary interest in the premises. This agreement was in effect at all material times, and appellant asserts in her affidavit that she consistently met all of her obligations thereunder. Appellant asserts that title in fact reverted to her on or about August 21, 1981.
 
 
 5
 On January 8, 1981, Alexander Perciballi and Ronald Silvers, two of the City Employees named as appellees, inspected the subject premises and noticed that a bulge had developed in the upper eastern portion of the front wall of the building, and that there was a crack which they believed to be approximately three inches wide at its widest point between the front wall and the eastern wall of the building. The crack was said to extend from the roof above the fifth floor to a point somewhat above the level of the second floor. On January 13, 1981, the City instituted a proceeding pursuant to Section C26-80.0 or C26-84.0 of the Administrative Code to obtain a declaration that the building was unsafe and was to be demolished. It is undisputed that appellant did not receive formal notice of this proceeding, despite the existence of a notice requirement in Section C26-80.5 of the Administrative Code. In February, 1981--again without formal notice to appellant--the City entered into a contract with appellee BC Enterprises, Inc. under which BC was to demolish and remove the building.
 
 
 6
 On or about March 4, 1981, appellant learned from a plumber, who at the time was doing work for her and who lived in the vicinity of the building, about the City's plans to demolish the building. The following day, she visited the building, which was not occupied by tenants at the time, and found that the apartment doors had been removed and that men were removing the fireplace mantelpieces from the building. Immediately thereafter, appellant inquired of various City officials, including appellees Sakona, Cocolicchio, Dennis, Weiner, Juliano, and Minkin, as to their intentions and stated her objections to the proposed demolition. She was told by these City officials that the building would be demolished despite her objections.
 
 
 7
 Appellant thereafter engaged one Robert E. Lawless, a Registered Architect of the State of New York, and one Luke Licalzi, a Professional Engineer licensed by the States of New York, New Jersey and Connecticut, to inspect the building. The inspections were conducted on March 5, 1981 and March 8, 1981. Both the architect and the engineer reported to appellant that the crack was only 2 inches at its widest point and that the wall was easily repairable. She reported these findings to appellee Minkin soon thereafter, who refused to halt the demolition proceedings and allegedly told her that her engineer could lose his license for saying the building was not dangerous.
 
 
 8
 Despite appellant's attempts to halt the demolition, the building was demolished by BC during the period from March 23, 1981 through March 27, 1981, which was approximately 3 months after appellees Perciballi and Silvers originally noticed the crack and bulge in the building.
 
 
 9
 Appellant commenced this Section 1983 action along with asserted pendent state claims on November 20, 1981. Appellees moved to dismiss the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief could be granted. Appellant cross-moved for partial summary judgment pursuant to Fed.R.Civ.P. 56(a), on the issue of appellees' liability under Section 1983. In an opinion filed on August 30, 1982, the district court treated the motions as cross-motions for summary judgment, and granted summary judgment in favor of appellees. The court found that the City did not give notice to Burtnieks of its intent to demolish the building, as required by Section C26-84.0 of the Administrative Code. Nonetheless, the court held that appellant had failed to state a claim under Section 1983 because: (1) under Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the City's failure to give notice of the demolition was not a deprivation of due process, since "the deprivation did not occur as a result of some established state procedure," id. at 543, 101 S.Ct. at 1917; (2) appellant may pursue a tort remedy pursuant to N.Y.Gen.Mun.Law, Section 50-i (McKinney 1981-82) for wrongful damage to property in state court, under which she would be entitled to a full hearing and may obtain full redress for her alleged property loss, citing Archbishopric of New York v. City of New York, 82 A.D.2d 777, 440 N.Y.S.2d 650 (1st Dept.1981), modified on other grounds sub nom. Little Antigone Theater, Inc. v. City of New York, 56 N.Y.2d 686, 436 N.E.2d 1320, 451 N.Y.S.2d 718 (1982); and (3) emergency demolition without notice is authorized under section 643a-13.0 of the Administrative Code, which is constitutional under Hodel v. Virginia Surface Mining & Reclamation Association, Inc., 452 U.S. 264, 302, 101 S.Ct. 2352, 2373-74, 69 L.Ed.2d 1 (1981).
 
 II. Discussion
 A. Summary Judgment Motion
 
 10
 Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the pleadings, affidavits, etc. show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing, on the basis of admissible evidence adduced from persons with personal knowledge of the facts, that there is no genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); Schiess-Froriep Corp. v. S.S. Finnsailor, 574 F.2d 123, 126 (2d Cir.1978); United States v. Pent-R-Books, Inc., 538 F.2d 519, 529 (2d Cir.1976), cert. denied, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). The affidavits and exhibits submitted by the parties "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); see Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962).
 
 
 11
 The standard applied by a reviewing court to determine whether summary judgment was properly granted is the same as that applied by the district court initially under Rule 56(c). C. Wright, A. Miller & M. Kane, 10 Fed.Prac. & Proc. Sec. 2716 (2d ed.1983). The party who defended against the motion has the benefit of the court's reading of the record in the light most favorable to him. Diebold, 369 U.S. at 655, 82 S.Ct. at 994. With this in mind, we proceed to analyze appellant's claims.
 
 B. Section 1983
 
 12
 In Adickes, 398 U.S. at 150, 90 S.Ct. at 1604, the Supreme Court set forth the two essential prerequisites to any action under Section 1983: (1) the conduct complained of must have been committed by a person acting under color of state law, and (2) this conduct must have deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. Insofar as the City employees are concerned, there is no question that the first prerequisite is met; we note that the acts at issue were performed by city employees in positions of considerable authority, namely, persons with sufficient authority to direct the demolition of real property, acting pursuant to the Administrative Code. Such acts by city officials may indeed constitute state action under Section 1983. See Goldberg v. Kelly, 397 U.S. 254, 256, 262, 90 S.Ct. 1011, 1014, 1017, 25 L.Ed.2d 287 (1970); Monroe v. Pape, 365 U.S. 167, 169, 180, 81 S.Ct. 473, 474, 480, 5 L.Ed.2d 492 (1961); Jennings v. Patterson, 488 F.2d 436, 441 (5th Cir.1974). Moreover, since these officials had "final authority over significant matters involving the exercise of discretion, the choices [they made may] represent government policy." Rookard v. Health and Hospitals Corp., 710 F.2d 41 (2d Cir.1983), at 45. Thus, the first prerequisite would be met insofar as the city itself is concerned as well. Evidence introduced at trial may place BC Enterprises in a position similar to that of the City. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52, 90 S.Ct. 1598, 1604-06, 26 L.Ed.2d 142; United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156-57, 16 L.Ed.2d 267 (1966). Thus, for purposes of this appeal, we must focus on whether Burtnieks was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.
 
 
 13
 Appellant contends that she suffered a deprivation of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.[2] It is clear that the City's act of demolishing appellant's building constituted a deprivation of property, and the appellees make no argument to the contrary. It remains to be decided whether this deprivation occurred without due process of law.
 
 
 14
 1) What Process is Due?
 
 
 15
 To determine whether due process was provided, we must first decide what process was due to Burtnieks from the City. It is well established that "[t]he fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914); see Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971). This opportunity must be "granted at a meaningful time and in a meaningful manner," Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), and the hearing must be "appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In the present context, this would require timely and adequate notice and "an effective opportunity to defend by confronting any adverse witnesses and by presenting [appellant's] own arguments and evidence orally." Goldberg, 397 U.S. at 268, 90 S.Ct. at 1020-21; see Mullane, 339 U.S. at 314-15, 70 S.Ct. at 657-58. These rights are particularly important in situations such as that presented here, where appellant asserts that the acts at issue were based on allegedly "incorrect or misleading factual premises," Goldberg, 397 U.S. at 268, 90 S.Ct. at 1020, namely, that the condition of the building presented an immediate danger to the public health and safety.
 
 
 16
 The degree of formality and procedural requisites of an adequate hearing will vary from one situation to another. Where a deprivation of property is involved, the aggrieved individual must be given "an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Boddie, 401 U.S. at 379, 91 S.Ct. at 786 (footnotes omitted). Thus, the timing and nature of the required hearing "will depend on appropriate accommodation of the competing interests involved." Goss v. Lopez, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). The court must balance "the importance of the private interest and the length or finality of the deprivation; the likelihood of governmental error; and the magnitude of the governmental interests involved." Logan v. Zimmerman Brush Co., 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982) (citations omitted); see Goldberg, 397 U.S. at 262-63, 90 S.Ct. at 1017-18. It is clear, however, that "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." Logan, 455 U.S. at 434, 102 S.Ct. at 1157 (emphasis added).
 
 
 17
 Upon application of the Logan factors to this case, the district court may well find that Burtnieks was entitled to have the City consider the merits of her claims prior to demolishing her building. Burtnieks possessed an interest in the apartment building which provided her with a potential source of income. Moreover, the deprivation of that interest here is final, since the building has been demolished.[3] Thus, Burtnieks is no longer able to obtain a timely judicial review of the City's decision. The state's interest in protecting the public welfare and safety is undoubtedly substantial, but, in light of the lapse of 3 months before the destruction of the building, it is difficult to discern how that interest would have been compromised or diminished by granting appellant a hearing prior to the demolition.
 
 
 18
 2) Timing of Hearing Relative to Timing of Deprivation
 
 
 19
 The Supreme Court has recently provided further guidance on the question of timing of a hearing in relation to the timing of a property deprivation. In Parratt, the Court rejected the proposition that a state must, in all circumstances, provide a hearing prior to the initial deprivation of property. Rather, the Court observed that in some situations, a postdeprivation hearing will meet the requisites of procedural due process, while in others, only a predeprivation hearing will suffice. A predeprivation hearing has been required when "the deprivation of property was pursuant to some established state procedure and 'process' could be offered before any actual deprivation took place ... to serve as a check on the possibility that a wrongful deprivation would occur." Parratt, 451 U.S. at 537-38, 101 S.Ct. at 1914. For instance, a failure to provide preseizure notice and hearing has been held to violate due process standards when a state statute: allows secured creditors to obtain prejudgment writs of replevin in ex parte proceedings, Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); provides for the taking of a driver's license and registration of an uninsured motorist involved in an accident, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); and allows state and city officials to cut off welfare benefits, Goldberg, 397 U.S. at 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. In each of these instances, the Court found that a wrongful deprivation without notice would result in a grave deprivation to the individual and that the interest of the government to be served by the immediate seizure was less substantial.
 
 
 20
 In other situations, however, a postdeprivation hearing was held to be adequate. Under Parratt, a postdeprivation hearing complies with due process requirements when:
 
 
 21
 either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.
 
 
 22
 451 U.S. at 539, 101 S.Ct. at 1915 (footnote omitted). Thus, in rejecting the proposition that due process always requires a predeprivation hearing, the Court observed that "[t]his rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available." Id. at 540-41, 101 S.Ct. at 1915-16. For instance, immediate seizure coupled with a postdeprivation hearing has been held to comply with procedural due process requirements when: a federal statute provides that government officials may order immediate cessation of surface mining operations to protect the public health and safety, Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); and a municipal ordinance provides for the summary seizure and destruction of unwholesome food, North American Cold Storage Co. v. Chicago, 211 U.S. 306, 315-16, 29 S.Ct. 101, 104, 53 L.Ed. 195 (1908).
 
 
 23
 The district court herein apparently concluded that a predeprivation hearing was not required because the acts of the city officials were not pursuant to an "established state procedure."[4] In our view, however, decisions made by officials with final authority over significant matters, which contravene the requirements of a written municipal code, can constitute established state procedure. Cf. Rookard, 710 F.2d at 45. Here, the order to demolish Burtnieks' building, and the authorization of that act by numerous city officials, including the Commissioner of the Department of Buildings, under the circumstances herein, can be evidence of "established state procedure."
 
 
 24
 Moreover, the district court erroneously concluded that:
 
 
 25
 In addressing plaintiff's contention that Sec. 643a-13.0 [which provides for emergency demolitions without prior notice or hearing] is unconstitutional ... the inquiry must focus on the adequacy of the post-deprivation remedies available to plaintiff. The inquiry is not whether demolition should have been ordered and, consequently, the fact that plaintiff claims that an emergency did not exist is not dispositive .... [T]he tort remedy available to plaintiff under state law can fully compensate her for the property loss she allegedly suffered and is sufficient to satisfy due process.
 
 
 26
 This misinterprets Parratt. Under Parratt, before reaching the question of the adequacy of the state remedies, a court must first find "the necessity of quick action" or "the impracticality of providing any predeprivation process." Id. 451 U.S. at 539, 101 S.Ct. at 1915. Thus, the existence vel non of an emergency herein is a material fact and is vigorously contested by the parties. Consequently, we conclude that summary judgment was improperly granted to the appellees.
 
 
 27
 We also note that appellees do not claim that it would have been impractical to provide a predeprivation hearing. Clearly, in Parratt, where the deprivation occurred as the result of negligence of a state employee, it was not practical to provide a predeprivation hearing since no one knew or could have known of the deprivation until after it had occurred. In contrast, here, city officials knew for three months prior to the demolition that the deprivation would occur. They also were aware that appellant held an interest in the building, as she made numerous pleas to city officials that the building should not be demolished. In such a situation, as Justice Blackmun states in his concurring opinion in Parratt, "[t]he mere availability of a subsequent tort remedy before tribunals of the same authority that, through its employees, deliberately inflicted the harm complained of, might well not provide the due process of which the Fourteenth Amendment speaks." 451 U.S. at 546, 101 S.Ct. at 1918. In any event, if on remand the district court should find that no emergency existed and it would not have been impractical to provide a predeprivation hearing, it is unlikely that the existence of a post deprivation state remedy would satisfy procedural due process requirements since the conditions of "quick action" or "impracticality" set forth in Parratt would not have been met.
 
 
 28
 Accordingly, we reverse the district court's grant of summary judgment and remand for further proceedings not inconsistent herewith.
 
 
 
 [1]
 42 U.S.C. Sec. 1983 (Supp. III 1979) provides in part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [2]
 The Fourteenth Amendment to the United States Constitution states in part:
 No state shall make or enforce any law which shall ... deprive any person of life, liberty or property, without due process of law.
 
 
 [3]
 We note that any postdeprivation remedy could not restore Burtnieks to the position she was in prior to the deprivation since the deprivation involved the destruction of real property, which by its nature is unique. Losee v. Morey and Cramer, 57 Barb. (NY) 561 (1865); D. Dobbs, The Law of Remedies 311 (1973); M. Van Hecke, Cases and Materials on Equitable Remedies 14 (1959)
 
 
 [4]
 We note that Parratt does not explicitly require that the acts at issue be pursuant to an established state procedure to meet due process standards. Rather, it states that in most cases in which the Supreme Court has required a predeprivation hearing, the subject acts have been pursuant to such a procedure. 451 U.S. at 537-38, 101 S.Ct. at 1913-14