Leonard C. SPANO, Individually and as Administrator of the Estate of Mark Anthony Spano, Deceased, Plaintiff,

v.

Edward H. McAVOY, Individually and as Deputy Sheriff of the Onondaga County Sheriff's Department, Onondaga County, Onondaga County Sheriff's Department, and "John Doe", said named being fictitious and intended to be the member of the Onondaga County Sheriff's Department who destroyed the Mobile Radio District's tape recording of April 16, 1978, Defendants.

No. 83–CV–1580.

United States District Court, N.D. New York.

June 15, 1984.

Leslie H. Cohen, Cortland, N.Y., for plaintiff.

Robert J. Rossi, Onondaga County Atty., Syracuse, N.Y., for Onondaga County defendants; John R. Voninsky, Asst. County Atty., Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This is a civil rights action arising from the death of plaintiff's son following a high-speed chase by defendant Edward McAvoy, an Onondaga County Deputy Sheriff.

Leonard C. Spano, individually and as Administrator of the Estate of Mark A. Spano, commenced this action in December of 1983, by filing a *pro se* complaint against twenty defendants, asserting five causes of action. Subsequently, plaintiff retained counsel and filed the instant Amended Complaint naming only four defendants: Onondaga County, Onondaga County Sheriff's Department, Deputy McAvoy, and "John Doe", an unidentified member of the Onondaga County Sheriff's Department. The Amended Complaint delineates two causes of action each of which is asserted pursuant to 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986, to redress the alleged deprivation of plaintiff's rights under the 4th, 6th, 8th and 14th amendments.

Plaintiff, in Count I of the Amended Complaint, alleges that Deputy McAvoy chased plaintiff's son in a manner that caused his son "to lose control of his vehicle, leave the road, strike a tree, and lose his life." *Amd. Complaint* ¶ 24. In Count II of the Amended Complaint, plaintiff alleges that an unidentified member of the Onondaga County Sheriff's Department deliberately destroyed tape recordings of radio communications between Deputy McAvoy and the County Sheriff's Department "Mobile Radio District Control Center", in order to deprive plaintiff of evidence in a state wrongful death action stemming from the incident alleged in Count I. *Amd. Complaint* ¶ 37. It is this deliberate de-

struction of evidence that plaintiff alleges deprived him of some right, privilege, or immunity secured by the constitution or the laws of the United States. *Amd. Complaint* ¶ 41.

The defendants moved to dismiss the action on the ground that plaintiff had failed to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). On March 27, 1984, in a ruling from the bench, this court dismissed the Amended Complaint except insofar as plaintiff's allegations in Count II purported to state a claim under § 1983 for the alleged deprivation of plaintiff's due process rights. The court reserved judgment on that issue, and directed the parties to submit additional briefs; the parties' briefs have been received.

As explained herein, defendants' motion to dismiss the § 1983 claim is now granted.

BACKGROUND

Assuming the truth of the allegations in the Amended Complaint, as the court must on a motion to dismiss, *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), the facts are as follows. On the evening of April 16, 1978, the decedent Mark A. Spano was proceeding on Route 690 when he was clocked by radar by defendant McAvoy as travelling at 97 miles per hour. After calling for assistance, Deputy McAvoy gave chase in the course of which he shined his searchlight into Spano's vehicle. Spano's vehicle went off the road and collided with a tree; Spano died soon thereafter from injuries sustained in the collision. Plaintiff Leonard C. Spano, father of the deceased, alleges that the immediate cause of the accident was McAvoy's shining the searchlight into the decedent's car, in addition to other actions that caused the decedent to lose control of the vehicle. Plaintiff contends that radio communications to and from McAvoy on April 16, 1978, were monitored and recorded by the Mobile Radio District's Control Center, and that these recordings "could provide independent evidence of the total circumstances surrounding the car pursuit...." *Amd. Complaint* ¶ 31.

Subsequent to the incident, Leonard Spano commenced a wrongful death action in New York State Supreme Court, Onondaga County, against Deputy McAvoy, Onondaga County, and various other defendants. Plaintiff alleges that throughout the course of that action his attorney sought, through discovery, to uncover the status and/or whereabouts of the tapes, *Amd. Complaint* ¶ 32, and that he secured a court order in that regard. In response to the court order, defendant Onondaga County produced the affidavit of Captain David Stevenson of the Onondaga County Sheriff's Department in which Captain Stevenson states that to the best of his belief the tapes in question were erased within 35 days of the incident pursuant to a department policy adopted as a result of its need to recycle a limited number of tapes. *Amd. Complaint Exh.* G. Stevenson also states that no notice to preserve the tape prior to its erasure had been given to him. *Id.* (Also produced was the affidavit of Dennis G. O'Hara, attorney for the County of Onondaga, which states, in pertinent part, that unless a request is made to preserve a tape it will be erased and reused. *Amd. Complaint Exh.* H).

Plaintiff's claim with respect to these tapes is, essentially, that at some point within 35 days of the initial incident an unidentified person in the Sheriff's Department deliberately destroyed potentially valuable evidence in order to absolve the County Sheriff's Department of liability thus violating plaintiff's civil rights. *Amd. Complaint* ¶¶ 36, 37, 41.

At the outset it should be noted that plaintiff is apparently not challenging the department's "tape erasure" policy, but rather only the action of an unknown person in the County Sheriff's Department. *See Amd. Complaint* ¶ 37. The issue before the court, therefore, is whether, for the purposes of a § 1983 action, plaintiff has either a property or liberty interest in allegedly material tape recording evidence, sought during the course of a still-active state civil lawsuit, owned and in the possession of the Onondaga County Sheriff's De-

partment, the erasure of which has allegedly denied plaintiff due process of law.

## DISCUSSION

 Dismissal pursuant to Rule 12(b)(6) is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80. To state a claim under § 1983, plaintiff must adequately allege (1) that conduct was committed by a person acting under color of state law which (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Burtnieks v. City of New York*, 716 F.2d 982, 986 (2d Cir.1983). In this instance, there is a sufficient allegation of conduct under color of state law. The difficulty is in ascertaining whether the allegations state a deprivation of any right, i.e., any property or liberty interest, protected by the 14th amendment. In determining whether the particular interest asserted falls within the 14th amendment's protection of property or liberty, a court's attention must be focused on the "nature" and not the "weight" of the interest at stake. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).

### 1. *Property Interest*

[3, 4] While actual ownership is not a necessary prerequisite for finding a property interest, *id.* at 571–72, 92 S.Ct. at 2706, plaintiff, in the case at bar, must have more than an abstract need or desire for the evidence in question; he must have a legitimate claim of entitlement to it. *Cf. id.* at 577, 92 S.Ct. at 2709. Property interests are not created by the Constitution; rather, they are created, and their dimensions are defined, by existing rules or understandings stemming from independent sources, such as state law. *Id.* Federal constitutional law, however, determines whether the interest rises to a level of a legitimate claim of entitlement protected by due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); *Goetz v. Windsor Central School District*, 698 F.2d 606 (2d Cir.1983).

In this instance plaintiffs have failed to identify, and the court in its own research has failed to locate, any state law, rule, or regulation that would confer a legitimate claim of entitlement to the preservation of Sheriff's Department tapes, other than, perhaps, the Department policy of preserving such tapes for 35 days, or for longer upon timely request. Arguably, had a timely request been made, that is, a request within 35 days of the incident, this could have constituted an understanding stemming from an independent source sufficient to yield a legitimate claim of entitlement protected by due process. *See Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Plaintiff, however, does not allege making a request for preservation of the tapes within the 35-day period and the court is not persuaded that plaintiff's subsequent requests for discovery vest any constitutionally protected property interest in the matter sought to be discovered.

New York law does proscribe tampering with physical evidence which is or is about to be used in an official proceeding or a prospective official proceeding.[1] N.Y. Penal Law §§ 215.40, 215.35. This penal provision does not, however, vest any particular individual with an entitlement to the preservation of evidence rising to the level of a constitutionally protected property interest.

---

**1.** Plaintiff, in a "public policy" argument, contends that absent a finding by this court of a cognizable property interest police departments could not be held accountable for acts of misconduct involving the destruction of seemingly unfavorable (to the police department) evidence and that this court should recognize some sort of liberty interest as a result of the impairment to plaintiff's case. *Plaintiff's Brief* at 5, 6. The liberty issue is discussed *infra*. Here it is sufficient to note the existence of criminal sanctions provided by state law, in addition to the fact that bad faith destruction of relevant evidence may constitute an admission by conduct (misconduct constituting obstruction of justice). *See* McCormick, Evidence 2d ed. § 273 (1972).

Plaintiff's claim of a property interest, under a "legitimate claim of entitlement" rationale, in either his underlying civil lawsuit or in the potential recovery with respect to the destruction of evidence, is not, to this court's knowledge, supported by any reported § 1983 decision. The fact that the destruction of evidence has, in at least one instance, been held to give rise to tort liability under state law, *Smith v. Superior Court for the County of Los Angeles,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984), does not lead to the conclusion that the interest at stake is constitutionally protected. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).[2]

The Supreme Court has held, under an "access to courts" rationale, that a cause of action is a "species of property" protected by the 14th amendment's due process clause. *Logan,* 455 U.S. at 428, 102 S.Ct. at 1153, *citing, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Under this theory, a State may not deprive one of the right to hold another accountable in court for alleged negligent or illegal impairment of his interest, *Mullane,* 339 U.S. at 313, 70 S.Ct. at 656, nor may a State deprive one who has been forced to litigate in order to redress an injury or grievance access to the courts, absent a countervailing state interest of overriding significance. *Logan,* 455 U.S. at 429–30, 430 n. 5, 102 S.Ct. at 1154–1154 n. 5. In the case at bar, while plaintiff's ability to litigate has allegedly been impaired, *see Plaintiff's Brief* at 4, his access to the courts has not been interfered with. This is apparent by the fact plaintiff has brought a state court wrongful death action and this federal court civil rights action. No substantial filing fees have been imposed, *see Boddie v. Connecticut,* 401 U.S. 371, 380–81, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971), nor has any state statute imposed any prior settlement of claims, *see Mullane,* 339 U.S. at 311, 70 S.Ct. at 655, nor has plaintiff's claim been summarily or arbitrarily dismissed by this court. *See Logan,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (inadvertent failure of state agency to comply with its own procedural requirements causing complainant to be deprived of a consideration of his claim on the merits held to violate procedural due process). In short, plaintiff is free to litigate, albeit somewhat impairedly.

2. *Liberty Interest*

That arbitrary liberty deprivations are also protected by due process is beyond doubt. *See Roth,* 408 U.S. at 569, 92 S.Ct. at 2705. Liberty "denotes not merely freedom from bodily restraint, but also the right of the individual ... generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." *Id.* at 572, 92 S.Ct. at 2706, *quoting, Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Although the *Roth* court noted that "liberty" in a free society must have a broad meaning, *Roth,* 408 U.S. at 572, no protectible "liberty" interest can be discerned in the case at bar.

While it has been recognized that a criminal defendant may have a § 1983 claim for deprivation of liberty without due process where law officers conceal evidence that would have exculpated the defendant, *see Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutor who allegedly suppressed exculpatory evidence

---

**2.** In *Smith v. Superior Court for the County of Los Angeles, supra,* a California State Court held that a prospective products liability action is a valuable "probable expectancy" that the law should protect from unreasonable interference. The court there recognized a new tort—intentional spoliation of evidence—entitling a party who needed certain evidence for a prospective civil action to recover damages. The wrongdoers in that case had destroyed, lost, or transferred certain physical evidence he had previously agreed to keep pending further investigation. Although torts when committed by public officials may give rise to § 1983 claims, the circumstances of the California case are immediately distinguishable from the case at bar. There the wrongdoer had *previously agreed* to keep certain evidence; had the wrongdoer been a public officer, arguably this previous agreement might have constituted an "understanding" stemming from an independent source yielding a legitimate property entitlement under *Roth. See Smith v. Superior Court for the County of Los Angeles, supra.*

held absolutely immune, however, from § 1983 suit), no analogous "liberty" deprivation is involved in civil lawsuits as a result of official evidence tampering. Plaintiff is not incarcerated nor is his reputation maligned due to official misconduct.

Insofar as plaintiff can be said to assert a liberty interest in either access to evidence or in pursuing his lawsuit, the Supreme Court has recently noted that "(A)n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1747 n. 12, 75 L.Ed.2d 813 (1983) (quoted in *BAM Historic District Ass'n v. Koch,* 723 F.2d 233, 237 (2d Cir.1983)). State law may create substantive limits on state officials' authority, e.g., and thereby create liberty interests; the mere presence of procedure, however, does not. *Cofone v. Manson,* 594 F.2d 934, 938 (2d Cir.1979) (cited in *BAM Historic District Ass'n, supra,* at 236). In the case at bar, no statute, rule or regulation gave plaintiff an expectation that the tapes would be preserved beyond the 35 days without a timely request. *Cf. Berard v. State of Vermont Parole Board,* 730 F.2d 71, 72 (2d Cir.1984) (parolee protected by due process only if there is a legitimate expectation of parole manifested in statute, rule, or regulation). Lastly, plaintiff has no cognizable liberty interest protecting him from the impairment of his case nor from his inability to litigate successfully as a result of defendants' actions. *Cf. BAM Historic District Ass'n,* 723 F.2d at 237.

(Plaintiffs there had no cognizable liberty, or property, interest in preventing the decline in property values which might result from the location of a shelter for the homeless in their neighborhood).[3]

CONCLUSION

■■■ Plaintiff's § 1983 claim fails for want of either a cognizable property or liberty interest in the destroyed evidence, the underlying civil lawsuit, or in any potential recovery.[4] Defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R. Civ.P., is, therefore, granted.

SO ORDERED.

**3.** Plaintiff in his brief states that "the serious erosion to ... plaintiff's chose in action by destruction of the tape recording is no less contemptable (sic) than impinging on a criminal defendant's liberty interest." *Plaintiff's Brief* at 6. Even if true, the erosion of a chose in action does not infringe a cognizable liberty interest rising to the level of 14th amendment due process protection.

**4.** Even were the court to find some sort of cognizable property or liberty interest to which plaintiff had a legitimate entitlement, official immunity would apparently bar recovery. The County defendants would escape liability because plaintiff is not challenging the "tape erasure" policy of the County Sheriff's Department, *see Monell v. Department of Social Services,* 436

U.S. 658, 690, 694, 98 S.Ct. 2018, 2035, 2037, 56 L.Ed.2d 611 (1978); furthermore, a municipality cannot be held liable under the doctrine of respondeat superior for the actions of its employees. *See id.* at 691, 98 S.Ct. at 2036. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the unknown individual defendant would most probably escape liability for civil damages because the erasure of the tapes did not violate clearly established constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738. (Although *Harlow* involved federal executive officials, the *Harlow* Court intimated that the same standard for qualified immunity would hold for state executive officials. *See id.* at 818 n. 30, 102 S.Ct. at 2738 n. 30.