Conroy BODDEN, Plaintiff,

v.

MORAN TRANSPORTATION CO., INC. and the M/V "CYNTHIA MORAN," Defendants,

In the Matter of the Complaint of the TUG CYNTHIA MORAN, INC. and Moran Towing & Transportation Co., Inc., for Exoneration From or Limitation of Liability.

Nos. 91 Civ. 6064 (RWS), 91 Civ. 1496 (RWS).

United States District Court, S.D. New York.

June 3, 1993.

Warren L. Eddington, Brownsville, TX, for plaintiff

Profeta & Eisenstein, New York City, for defendants by Michael J. Orlofsky, of counsel.

## OPINION

SWEET, District Judge.

The defendants, Moran Towing and Transportation Co., Inc., and the M/V "CYNTHIA MORAN" (the "Tug") (collectively, "Moran") have moved pursuant to Rule 56, Fed.R.Civ. P., for an order granting summary judgment against the plaintiff, Conroy Bodden ("Bodden").

For the reasons set forth below, the motion is denied.

### Parties

Bodden is an individual who is a citizen of and resides in New Orleans, Orleans Parish, Louisiana.

Moran Towing and Transportation Co., Inc., is a corporation duly organized and existing pursuant to the laws of the State of Connecticut. It is the owner and operator of the Tug.

### Facts

Bodden asserts his right to recover damages for injuries he allegedly received while employed as a deckhand on the Tug pursuant to the provisions of the Jones Act, 46 U.S.C.App. § 688, and the Admiralty and General Maritime Law of the United States as it relates to negligence and unseaworthiness.

Bodden was hired in Louisiana and was flown to New York harbor. On September 14, 1988, the Tug was assigned to tow garbage barges, and Bodden and his watch partner were directed by their superior, Captain Nolan Guillot, to tie four barges to the Tug for tow. During the course of the assignment, a line securing one of the barges to the Tug parted, necessitating its replacement. While carrying the new line to replace the one that had parted, Bodden alleges that he suffered an injury to his head, neck, and back.

In his Complaint, Bodden asserts that his injuries resulted from Moran's negligence in failing to maintain the Tug properly, failing

to provide the necessary appurtenances for safe navigation of the Tug, failing to provide a safe work place, failing to maintain the towing lines properly, and failing to man the Tug adequately, and in running the Tug without an adequate crew. Finally, on Bodden's theory, each of these acts of commission or omission also constituted a condition of the unseaworthiness of the Tug.

Moran filed this motion on February 19, 1993. Oral argument was heard on March 10, 1993, and it is considered submitted as of that date.

### Discussion

#### I. *Rule 56 Standards for Summary Judgment*

The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1, namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991).

The Second Circuit has repeatedly noted that "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting) and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)); *see United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Burtnieks v. City of New York,* 716 F.2d 982, 983–84 (2d Cir.1983). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant … a rational trier could not find for the nonmovant, then there is no

genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

■ When a motion for summary judgment is made and the nonmoving party will bear the burden of proof at trial, "Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991). However, if the moving party is still entitled to judgment as a matter of law after all the facts alleged by the nonmoving party are resolved in his favor as true, then any remaining factual disputes are neither "genuine" nor "material" and will not prevent the court from granting the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("a material fact is 'genuine' … if the evidence is such that a reasonably jury could return a verdict for the nonmoving party"). Thus, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Finally, the court must look to the substantive law to determine which facts are "material," to wit, disputed facts that might affect the outcome of the suit under governing law. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. It follows, then, that "[e]ntry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162 (2d Cir.1991).

#### II. *Bodden Has Alleged A Sufficient Claim To Withstand This Motion For Summary Judgment*

■ In response to Moran's contention interrogatories and in the Joint Pre–Trial Order, Bodden limited his claims of liability to two allegations. Moran either created an unseaworthy condition by, or was negligent in, first, operating the Tug in a manner which caused the line securing the barge to the Tug to part; and second, directing Bodden to replace the parted line without assis-

tance when such a task ordinarily requires additional assistance from other members of the crew.

With regard to Bodden's first contention, it is irrelevant whether the parting of the line constituted an unseaworthy condition or whether Moran was negligent in creating such a condition because Bodden does not claim that his injury was caused by the parting of the line. The gravamen of Bodden's Complaint is that he was injured as a result of the activity of replacing the line. Thus the only effect that the parting of the line had on Bodden was that it resulted in his being assigned that task of replacing that line—a task that, as Bodden stated in his deposition testimony, was a common occurrence because the lines frequently broke and a supply of extra line was kept on board the Tug to be used in those circumstances.

While the line could have parted for any number of reasons which would have necessitated its replacement, the simple fact that Bodden was told to replace the line neither establishes the unseaworthiness of the Vessel *per se* nor gives rise to a cause of action by Bodden against Moran. The decision to replace the line did not contribute to the Vessel's seaworthiness, and Moran could have decided to replace it for any of a number of reasons or even for no reason whatsoever and given Bodden the task of replacing it.

While Bodden cites various authorities in support of the proposition that a shipowner has an absolute duty to every seaman employed on board the ship to furnish and maintain a vessel and its appurtenances in a manner that renders them reasonably fit for their intended use, the question of whether the line that parted was unreasonably defective and rendered the Tug unseaworthy need not be reached because the condition and failure of the line is not a proximate cause of Bodden's alleged injury.[1]

This action resolves to the single contention that Bodden was assigned to do a task that required additional crew members to accomplish in a safe and reasonable manner. As a result of this alleged negligence on Moran's part, Bodden contends that the Tug was "momentarily, instantaneously, and transitorily" rendered unseaworthy. Joint Pre-Trial Order at 3.

Moran asserts that this contention necessarily fails because of the apparently inconsistent positions Bodden has taken on this issue in his pleadings and in his deposition testimony. Moran casts Bodden's second contention as the allegation that "he was required to do a two man job by himself," Opp.Aff. at ¶ 10, and asserts that Bodden contradicted this contention by testifying at his deposition that he was assisted by his watch partner in replacing the line.

However, Moran has misstated Bodden's claim. In the Complaint, Bodden asserts that Moran created an unseaworthy condition by, or was negligent in, "running the vessel without an adequate number of crew members." Compl. at IV.6. Bodden makes a similar statement in his answers to Moran's contention interrogatories when he alleges that "[t]he operator of the tug failed to assign a sufficient number of crew member to perform the operation of resecuring the barge to the tug." Answer to Interog. 4.a. Finally, in the Joint Pre-Trial Order, Bodden alleges that he was placed "in a position of an unreasonable risk of harm" when he was directed "to resecure the two vessels without additional assistance from other members of the crew." Joint Pre-Trial Order at 3.

In none of these pleadings does Bodden assert the claim that Moran was negligent in assigning him a two-man job to perform alone. Rather, the claim is that the job that he was assigned to do and did perform was one that required additional assistance than that which actually provided. This claim is consistent with Bodden's deposition testimony regarding the assistance he received from his watch partner in replacing the line. Moreover, Bodden's deposition testimony was that the other deckhand assisted him by paying out the replacement line, not in actually carrying it with Bodden. Thus, it remains a genuine issue of fact whether the

1. However, it is noted that it is unlikely that a line that parts during the course of its use would be unreasonably defective *per se*. The duty on tug owners to supply reasonably fit appurtenanc-es do not include providing their vessels with unbreakable securing lines under pain of rendering those vessels unseaworthy.

carrying of the line itself is a job that reasonably and safely required more than one person to perform under these circumstances.

Because the record on this motion is viewed in light most favorable to Bodden, to wit, all ambiguities and inferences to be drawn from the underlying facts are resolved in his favor and all doubts as to the existence of a genuine issue for trial are resolved against Moran, *see Brady,* 863 F.2d at 210, a rational trier could find for Bodden, *see Binder,* 933 F.2d at 191. Therefore, Bodden's claim asserting the negligence of Moran in assigning him the task of replacing the line is sufficient to withstand Moran's motion for summary judgment.

### Conclusion

For the reasons set forth above, Moran's Rule 56 motion for an order granting summary judgment against the plaintiff Bodden is denied.

It is so ordered.