Salvatore R. CURIALE, Superintendent of Insurance of New York, as Rehabilitator for Executive Life Insurance Company of New York, S.N. Phelps & Co., Northeast Investors Trust, Washington Mutual Savings Bank, Barry W. Blank, Andrew Gregor, James E. Erickson, Anchor National Life Insurance Company, American Investors Life Insurance Company, Inc., Jack Farber, Ota Limited Partnership, Robert M. Gintel and Cecil A. Godman, Plaintiffs,

v.

Maurice L. REISSMAN, Edward S. Reid, Marion P. Ames, Elwin S. Larson, Thomas J. Hennessy, Robert B. Goldstein, Arthur H. Christy, Frank A. Dellomo, William G. Sharwell, John Sadlik, and George R. Walker, Defendants.

No. 91 Civ. 6344 (MEL).

United States District Court, S.D. New York.

July 6, 1992.

---

Douglas R. Jensen, Andrews & Kurth L.L.P., New York City (Andrews & Kurth L.L.P., Hugh M. Ray, John A. Lee, Houston, Tex., Andrews & Kurth L.L.P., James B. Hicks, Soh–Yung M. Kim, Los Angeles, Cal., of counsel), for plaintiffs.

Simpson Thacher & Bartlett (Roy L. Reardon, of counsel), New York City, for defendants Edward S. Reid, Marion P. Ames, Elwin S. Larson, Thomas J. Hennessy, Arthur H. Christy, William G. Sharwell, John Sadlik and George R. Walker.

Milberg Weiss Bershad Specthrie & Lerach (Melvyn I. Weiss, Barry A. Weprin, of counsel), New York City, for defendants Maurice L. Reissman, Robert B. Goldstein and Frank A. Dellomo.

LASKER, District Judge.

The question presented is whether federal subject matter jurisdiction exists over plaintiffs' claims. Plaintiffs are several individual holders of notes issued by CrossLand Savings, FSB (CrossLand) who seek to collect two payments due in 1991 but defaulted on by the bank.

Plaintiffs have held 11¼ Senior Subordinated Capital Notes since they were issued in September 1986 by CrossLand. The notes were due on September 15, 1998 with interest payments due twice per year. Manufacturers Hanover Trust Corp. (MHT) is the trustee on the indenture governing the notes. CrossLand, which was experiencing financial difficulty in 1991 and for which the Federal Deposit Insurance Corporation (FDIC) has since been named as receiver, failed to make payments due to plaintiffs on March 15, 1991 and September 15, 1991.

Two suits have been brought on account of CrossLand's unsatisfied obligations on the notes. First, MHT instituted a separate action against CrossLand on behalf of all noteholders. That suit, originally filed in New York state Supreme Court, has been removed to this Court pursuant to 12 U.S.C. § 1819(b)(2) by the FDIC, which is

now defending in its capacity as receiver of CrossLand.

The present action is by individual noteholders against CrossLand's directors, whose failure to cause the bank to pay noteholders the amounts due in 1991 is alleged to have violated the directors' fiduciary duties, and to have been grossly negligent.

The directors move to dismiss the action, either pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, or, as to the gross negligence allegations, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. In the alternative, they move for a stay of this action until the suit by MHT is resolved.

The motion to dismiss pursuant to Rule 12(b)(1) is granted. Because this court has no subject matter jurisdiction, it is unnecessary to rule on the other questions raised.

## I.

There is no diversity among the parties, and plaintiffs' negligence claims arise under state law. Plaintiffs assert that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because their fiduciary duties claims arise under federal statutes and regulations governing federally chartered savings banks, or under federal common law. In addition, plaintiffs claim an implied private right of action under 12 U.S.C. § 1821(k), which authorizes federal suits by the FDIC against directors of insured institutions.

Defendants argue that no statute or regulation creates a federal cause of action such as plaintiffs assert, that the mere fact that CrossLand is federally chartered is insufficient to merit the creation of a federal common law of directors' duties, and that plaintiffs have not identified any unique federal interests or statutory directives which warrant the creation of such a body of law.

 Plaintiffs' first response is that the mere allegation in the complaint that the claim is federal is sufficient to confer jurisdiction on the court. In support they cite 5A Wright & Miller, Federal Practice and Procedure § 1350, n. 8, at 197. That treatise in turn draws from *Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963), which held that federal question jurisdiction does exist where "the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." 373 U.S. at 649, 83 S.Ct. at 1444. The rule, however, does plaintiffs little good for two reasons: first, in *Wheeldin* petitioners alleged violation of an actual federal provision (the Fourth Amendment), whereas here plaintiffs assert a cause of action whose very existence in any circumstances is in doubt and is challenged by the present motion. A bald statement that a claim is federal is not sufficient in such circumstances. To survive a motion pursuant to Rule 12(b)(1), plaintiffs' complaint must state a cause of action actually "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Moreover, to the extent the complaint does allege violations of existing federal law, the present motion can simply be treated as one to dismiss for failure to state a federal claim pursuant to Fed.R.Civ.P. 12(b)(6), as was done in *Wheeldin.*

Plaintiffs offer three somewhat more substantial arguments as to why their fiduciary duty claims should be held to raise federal questions affording this court subject matter jurisdiction: (1) federal common law must govern their claim either because the fiduciary duties of directors of a federally chartered institution are so related to other organizational questions governed by existing federal regulations that the creation of a federal rule of decision is necessary, or (in the alternative) because despite the absence of federal regulations on point a federal rule of decision is needed to protect federal interests; (2) "federal law" governs their claims "because the Debt Securities were issued pursuant to the federal statutory and regulatory scheme governing savings and loans under the Home Owners Loan Act" (HOLA), 12 U.S.C. § 1464; and (3) an implied private right of action exists under 12 U.S.C. § 1821(k),

which authorizes federal suits by the FDIC against directors of insured institutions.

These or similar questions have been raised in other jurisdictions, with mixed results. Despite the existence of some case law supporting plaintiffs' contentions, however, *see, e.g., Eureka Federal Sav. and Loan Ass'n v. Kidwell*, 672 F.Supp. 436 (N.D.Cal.1987); *but see AmeriFirst Bank v. Bomar*, 757 F.Supp. 1365 (S.D.Fla. 1991), it is insufficient to prevail, and the motion to dismiss is granted.

### A. Federal Common Law of Fiduciary Duties

 Federal common law claims are "federal questions" that satisfy the subject matter jurisdiction requirements of 28 U.S.C. § 1331. *See Illinois v. Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) ("Section 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin"). The dispositive question here is whether the fiduciary duty claim asserted by plaintiffs is legally cognizable as a matter of federal common law.

██ Although the Supreme Court has sanctioned the creation of federal common law in some circumstances, it has cautioned that courts should do so in "few and restricted" instances, *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963), which "fall into essentially two categories: those in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (citations omitted). The development of federal common law has been limited to instances where "our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control." *Id.*, 451 U.S. at 641, 101 S.Ct. at 2067.

Accordingly, to prevail here plaintiffs must demonstrate the existence of some federal statute or regulation or some other "uniquely federal interest[ ]," *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2067, authorizing or necessitating the creation of a federal rule.

Plaintiffs acknowledge that the fiduciary duties of directors are normally defined by state law, but argue that the reason for this practice is that the governmental unit by which the business in question is incorporated or chartered, usually a state, is the source of whatever law controls. They argue that because CrossLand is federally chartered, the duties of its directors must be a matter of federal law. In turn, they argue that a federal law of fiduciary duty either must be created by courts as common law to fill in gaps in the existing federal regulatory scheme, or must be adopted as judge-made common law if there are no federal regulations authorizing or necessitating a federal rule. Plaintiffs suggest the adoption of New York state law governing corporate directors' duties as federal common law.

██ However, the mere fact that an entity is federally chartered, rather than incorporated by a state, is not sufficient to establish federal question jurisdiction over claims of a breach of the fiduciary duties of an entity's directors. *See, e.g., Austin v. Altman*, 332 F.2d 273, 276 (2d Cir.1964) ("federal courts do not have jurisdiction over suits to recover damages for the alleged misconduct of national bank directors"); *Morast v. Lance*, 807 F.2d 926, 929 (11th Cir.1987) ("district court did not have subject matter jurisdiction merely because the defendant bank was a federally chartered bank").

Moreover, numerous cases involving the fiduciary duties of officers of federally chartered savings institutions have, without explicitly considering the possible creation of a federal common law governing those duties, found them to be controlled by state law. *See, e.g., Gibson v. First Federal Sav. & Loan Ass'n*, 504 F.2d 826, 830 (6th Cir.1974) (affirming dismissal of fiduciary duty claims against directors of

national bank for want of federal subject matter jurisdiction following dismissal of different federal claims); *Kinee v. Abraham Lincoln Federal Sav. & Loan Ass'n,* 365 F.Supp. 975 (E.D.Pa.1973). In addition, Congressional acceptance of state law as the source of fiduciary duties even for federally chartered institutions is suggested by the enactment of 12 U.S.C. § 1821(k), which authorizes the FDIC to sue directors or officers of insured institutions in federal court for, among other things, "disregard of a duty of care ... as such terms are defined and determined under applicable state law."

Plaintiffs have not identified any existing federal statute or regulation defining the fiduciary duties of directors of federal savings banks, or explicitly authorizing courts to do so.

Plaintiffs argue that because CrossLand is subject to comprehensive federal regulation of many areas of its activities and organization, courts must create a federal common law defining the fiduciary duties of its directors to fill the gaps in federal regulations. This proposition has enjoyed some support. *See Rettig v. Arlington Heights Federal Sav. & Loan Ass'n,* 405 F.Supp. 819, 826 (N.D.Ill.1975) ("Since only the Board may regulate or supervise the internal affairs of the defendant associations precluding any state interference and the fiduciary duties of directors and officers of federal savings and loan associations are matters relating to the internal affairs of the associations, only federal law may be applied to questions involving them"); *Beverly Hills Federal Sav. & Loan Ass'n v. Federal Home Loan Bank Board,* 371 F.Supp. 306, 314 (C.D.Cal.1973) ("the duties and responsibilities imposed upon fiduciaries ... by generally accepted and applied common law principles are implicit in the [Home Owners Loan] Act and the regulations promulgated thereunder by the agency responsible for enforcement and implementation of the Act"). Not all courts, however, have agreed that federal regulation warrants the creation of a federal common law of fiduciary duties. *See AmeriFirst Bank v. Bomar,* 757 F.Supp. 1365, 1374 (S.D.Fla.1991) (refusing to find a federal common law governing fiduciary duties of savings bank directors, because "[p]ermitting [plaintiffs] to sue their officers, directors and outside accountants for breach of fiduciary duties under state common law principles will not interfere with the successful functioning of the comprehensive federal scheme governing the savings and loan industry ... even though the law of fiduciary duties may vary somewhat from state to state").

The decisions imposing a federal common law of fiduciary duties as necessary to fill gaps in federal regulations are not persuasive. The Supreme Court has noted, "Even where there is related federal legislation in an area, ... it must be remembered that Congress acts against the background of the total *corpus juris* of the states." *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). *Wallis* held that state law, rather than federal common law, governed a dispute involving the assignment of mineral rights which originally were leased from the United States pursuant to federal statute, despite the existence of a federal statute providing that such leases were assignable, at least where the state "concededly provides a quite feasible route for transferring any mineral lease or contracting to do so...." 384 U.S. at 70, 86 S.Ct. at 1305. As in *Wallis,* so here there has been no showing that recourse to state law will in any way impair the functioning of the federal regulatory scheme governing CrossLand and similar institutions (or, for that matter, the rights of the parties), and state law affords a remedy that appears wholly adequate.

This conclusion is strengthened by two further considerations. First, the fact that the proposed federal rule plaintiffs suggest is simply to borrow New York law, either because New York is the forum state or the principal place of CrossLand's business, undercuts their assertion that a uniform rule is needed to further the existing federal regulatory scheme. A "borrowing" rule like plaintiffs' would hardly yield the allegedly necessary uniform federal rule. Second, Congress, by enacting 12 U.S.C.

§ 1821(k) and thereby authorizing the FDIC to sue directors for "disregard of a duty of care ... as such terms are defined and determined under applicable state law," appears to have accepted state law as governing the fiduciary duties of directors of federally insured savings institutions.

Accordingly, although it may be tempting to some to create a uniform body of federal law governing all aspects of federal savings institutions, there is no evident need or basis to do so. The mere fact that the regulations governing CrossLand are in most respects comprehensive but are silent on a particular point is not a sufficient basis for creating from wholecloth a new federal common law where state law is adequate for every apparent federal regulatory purpose.

■ It is true that even in the absence of a statutory or regulatory basis for the creation of federal common law, courts may create such law if necessary to further "uniquely federal interests." *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2067. However, no federal agency or official is a party to this suit or has any stake in its outcome. Plaintiffs have not identified any "uniquely federal interests" that would be impeded if the case were to proceed in a New York state court under New York law. And to the extent courts favoring a federal common law of fiduciary duties have discussed the existence of "unique federal interests" in a uniform federal rule, they typically have stressed only the "unique federal interests in the uniform regulation of the federally chartered savings and loan associations that can only properly be protected by the application of a federal rule of decision." *See Eureka Federal Sav. and Loan Ass'n v. Kidwell*, 672 F.Supp. 436, 439 (N.D.Cal.1987) (holding that federal common law governed the fiduciary duties of directors of a federal savings and loan and provided the basis for federal jurisdiction). *See also City Federal Sav. and Loan Ass'n v. Crowley*, 393 F.Supp. 644, 656 (E.D.Wis.1975) ("The federal common law governing the internal affairs of federal savings and loan associations includes the usual common law fiduci-

ary duties"). As discussed above, the effectiveness of federal regulation, while surely of importance, is not threatened by continued reliance on state courts and state law governing directors' fiduciary duties.

Although plaintiffs contend that the jurisdictional issue in this case is a question of first impression in this Circuit, they do invoke one decision by the Court of Appeals for this Circuit, *Murphy v. Colonial Federal Sav. & Loan Ass'n*, 388 F.2d 609 (2d Cir.1967) (Friendly, J.), which they claim demonstrates both the existence of unique federal interests warranting a federal cause of action and the need for federal common law to complete the existing federal statutory and regulatory scheme governing CrossLand. *Murphy* held that where an existing federal regulation authorized shareholder voting for directors either in person or by proxy, but was silent as to dissidents' right to know the identities of shareholders eligible to vote, dissident shareholders were entitled by "federal law" to receive the shareholder list they sought. 388 F.2d at 611. Although its discussion on point is sketchy, the *Murphy* court stated that the question, "which requires a fleshing out of the [Federal Home Loan Bank] Board's regulations, is one of federal law." *Id.* The *Murphy* decision is not in any way determinative of the issue in this case. *Murphy* was simply an exercise in the construction of federal regulations whose sketchy language required the court to "flesh out" their provisions in order to achieve the regulations' purpose.

### B. Fiduciary Duties as Implicit in Federal Regulatory Scheme

■ Plaintiffs next assert that "federal law" governs "because the Debt Securities were issued pursuant to the federal statutory and regulatory scheme governing savings and loans under the Home Owners Loan Act" (HOLA), 12 U.S.C. § 1464. This theory overlaps somewhat plaintiffs' common law arguments rejected above. The only new element is the claim that the determination of directors' duties arises directly under HOLA and regulations issued pursuant to it.

The argument is without merit. Although HOLA and other statutes and extensive federal regulations define many aspects of the constraints on and operation and obligations of federal savings institutions, they neither define the duties of savings bank directors nor grant federal jurisdiction over disputes involving those duties. The mere fact that the regulation in question authorizes the issuance of notes, 12 C.F.R. § 545.20, and that the dispute here involves CrossLand's obligations on notes, is too remote from the central issue of this case—whether the defendant directors violated their fiduciary duties—to provide a jurisdictional foundation.

### C. Implied Right of Action Under 12 U.S.C. § 1821(k)

█ Plaintiffs' final asserted basis of federal jurisdiction is that a private right of action is implied by 12 U.S.C. § 1821(k). That statute reads:

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request of the [Federal Deposit Insurance] Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation ... for gross negligence [or] disregard of a duty of care [or] intentional tortious conduct, as such terms are defined and determined under applicable State law.

By its own terms, the statute provides only for suits "by, on behalf of, or at the request of the FDIC," and is explicitly limited to cases "wholly or partially for the benefit of the Corporation." Nothing in the words of the statute or any legislative history suggests that the statute impliedly provides a private cause of action.

█ Moreover, plaintiffs do not assert this implied right of action in the complaint, and it cannot properly be presented through argument on a motion to dismiss. See Levy v. City of New York, 726 F.Supp. 1446, 1452 n. 6 (S.D.N.Y.1989). However, to prevent what would be a futile exercise in repleading, the claim's merits are considered below.

█ The controlling factors in determining whether an implied private cause of action is available are:

> ... whether the plaintiff is a member of the class for whose benefit the statute was enacted; whether Congress intended to create a private right of action; whether a private right of action is consistent with the underlying purpose of the legislative scheme; and whether the matter is traditionally relegated to state law.

*Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 97 (2d Cir.) (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)), *cert. denied,* 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). Congressional intent is the dominant factor. *See Karahalios v. National Federation of Federal Employees,* 489 U.S. 527, 532–33, 109 S.Ct. 1282, 1286–87, 103 L.Ed.2d 539 (1989) (unless "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist").

Here none of the factors is satisfied. Plaintiffs are not a "member of the class for whose benefit the statute was enacted," as § 1821(k) explicitly states its intent to authorize suits "for the benefit of the [FDIC]." Moreover, nothing in either the statute or the legislative history indicates that "Congress intended to create a private right of action." A private right of action is neither consistent nor inconsistent with the "underlying purpose of the legislative scheme," which aims at affording the FDIC with a means of relief from directors or officers of insured institutions, as plaintiffs' suit neither helps nor hinders the FDIC discernibly. Finally, as has been discussed above, directors' fiduciary duties are "traditionally relegated to state law."

Plaintiffs invoke *Milberg v. Lawrence Cedarhurst Federal Sav. & Loan Ass'n,* 496 F.2d 523, 525 (2d Cir.1974), for the proposition that "where the Board refuses to act, a private right of action may be implied from the statute." *Milberg,* however, is distinguishable for at least two

reasons. First, here neither the Office of Thrift Supervision (OTS) nor the FDIC has "refuse[d] to act." The OTS has "retroactively approve[d] Defendants' failure to make the interest payments," Plaintiffs' Brief at 8, and the FDIC, acting as receiver, is actually defending MHT's suit to enforce the very notes in question in this case. Second, enforcement of the regulation at issue in *Milberg*, which governed certain fees chargeable to borrowers, would have directly benefitted the plaintiffs in that case, whereas here there is no substantive regulation whose enforcement would obviously and directly benefit the plaintiffs.

In sum, plaintiffs have no claim under § 1821(k).

 \* \* \* \* \* \*

The motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) is granted and the complaint dismissed.

It is so ordered.