*Levin, Vodka Properties LLC v. City of Buffalo et al.*

In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2025

ARGUED: FEBRUARY 2, 2026
DECIDED: JUNE 18, 2026

Docket No. 25-762

————

MAXIM LEVIN, VODKA PROPERTIES LLC,
*Plaintiffs-Appellants*,

*v.*

CITY OF BUFFALO, BYRON W. BROWN, Individually and In His
Capacity as the Mayor, JAMES COMERFORD, JR., Individually and In
His Capacity as the Commissioner of the Department of Permit &
Inspection Services, LOU PETRUCCI, Individually and In His Capacity
as the Deputy Commissioner of the Department of Permit &
Inspection Services, TRACY KRUG, Individually and In His Capacity
as an Inspector for the City of Buffalo, KEVIN COYNE, Individually
and In His Capacity as an Inspector for the City of Buffalo,
*Defendants-Cross-Defendants-Appellees*,

EMPIRE DISMANTLEMENT CO.,
*Defendant-Cross-Claimant-Appellee.*

————

Appeal from the United States District Court
for the Western District of New York.

————

Before: WALKER, PARKER, AND BIANCO, *Circuit Judges*.

_____

Plaintiffs-Appellants ("Plaintiffs"), Maxim Levin and Vodka Properties LLC, brought this action against the City of Buffalo, certain City employees, and a private demolition company following the 2019 emergency demolition of a residential building Plaintiffs owned in Buffalo. The parties dispute whether (1) illegal drug activity on the property, which culminated in a late August overdose death on it where a needle was later found and (2) the building's vacant, abandoned, and structurally compromised state were sufficiently established at the time to justify the City's decision to order an emergency demolition under city law.

On appeal, Plaintiffs challenge the district court's grant of summary judgment on four of their Section 1983 constitutional claims and two additional claims under New York state law. Plaintiffs also challenge the district court's dismissal of their Section 1983 constitutional claims on qualified immunity grounds against individual employees and officials of the City; dismissal of their Section 1983 constitutional claims against a private demolition company; and dismissal of their claims against the City of Buffalo for lack of municipal liability.

For the reasons explained below, with respect to the procedural due process, unlawful taking, and unreasonable seizure claims, we conclude that summary judgment was unwarranted because there are questions of material fact as to whether the conditions of the property justified invoking the City's emergency demolition authority, which is a central issue underlying the resolution of each of those constitutional claims. In addition, because of the uncontroverted evidence demonstrating that Commissioner James Comerford, Jr., was the City's final policymaker with respect to the emergency demolition decision, the district court erred in granting summary judgment on the municipal liability claim due to a failure to show an official policy or custom. Moreover, given the disputed factual issues regarding whether the circumstances were sufficient to support an

emergency demolition, the district court also erred in granting summary judgment to the Commissioner on the ground of qualified immunity with respect to the procedural due process, unlawful taking, and unreasonable seizure claims. Finally, we affirm the district court's grant of summary judgment in all other respects.

Accordingly, we AFFIRM in part, VACATE in part, and REMAND Plaintiffs' remaining claims to the district court for further proceedings consistent with this opinion.

————

R. ANTHONY RUPP III (Chad A. Davenport and Paul D. Jager, *on the brief*), Rupp Pfalzgraf LLC, Buffalo, NY, *for* Appellants.

ROBERT E. QUINN, City of Buffalo, Buffalo, NY, *for* Appellees.

————

PER CURIAM:

Plaintiffs-Appellants ("Plaintiffs"), Maxim Levin and Vodka Properties LLC, brought this action following the 2019 emergency demolition of a residential building they owned in Buffalo, New York (the "Property"), by the City of Buffalo (the "City"). The Defendants are set forth in the caption. The parties dispute as to whether (1) illegal drug activity on the property, which culminated in a late August overdose death on it where a needle was later found and (2) the building's vacant, abandoned, and structurally compromised state were sufficiently established at the time to justify the City's decision to order an emergency demolition under city law.

Plaintiffs initially brought fourteen causes of action—(1) ten 42 U.S.C. § 1983 ("Section 1983") constitutional claims against the City, City Defendants, and Empire Dismantlement Company ("Empire," the private demolition company) and (2) four New York

common law claims against Empire. On July 13, 2023, a magistrate judge (Leslie G. Foschio, *M.J.*) issued a Report and Recommendation on Plaintiffs' fourteen claims. The magistrate judge recommended, in relevant part, denying Plaintiffs' summary judgment motion, granting Empire's motion for summary judgment, and granting in part and denying in part the City Defendants' motion for summary judgment.

In particular, the magistrate judge recommended granting Empire's motion for summary judgment as to Plaintiffs' Section 1983 constitutional claims after finding a "lack of state action by Empire" and, accordingly, determining that Empire was a private actor not susceptible to Section 1983 liability. Special App'x at 38. The magistrate judge separately recommended denying Plaintiffs' and City Defendants' motions for summary judgment as to Plaintiffs' procedural due process, unlawful taking, and unreasonable seizure claims. As to those claims, the magistrate judge identified disputed facts regarding notice to the owner and the condition of the building, which the magistrate judge found could call into question the City's decision to order its emergency demolition, and therefore precluded summary judgment on those claims. *See, e.g.*, Special App'x at 50–52. The magistrate judge recommended denying the City Defendants' assertion of qualified immunity because of these questions of material fact. Ultimately, the magistrate judge recommended that Plaintiffs' due process, unlawful taking, and unreasonable seizure claims proceed against the individual City Defendants and the City.

On February 29, 2024, the district court (John L. Sinatra, Jr., *J.*) accepted the magistrate judge's recommendation in part but sustained objections in part in two relevant respects. First, the district court dismissed Plaintiffs' procedural due process claim after determining there was no genuine dispute as to notice.[1] Second, the

---

[1] We note here, and discuss further below, that in granting summary judgment on Plaintiffs' procedural due process claim, the district court did not address whether the condition of the building necessitated an emergency demolition, as the magistrate judge had.

district court held, contrary to the magistrate judge's recommendation, that the individual City Defendants (Brown, Comerford, Petrucci, Krug, and Coyne) were entitled to summary judgment on qualified immunity grounds because they acted reasonably. The district court ordered that this action proceed only against the City of Buffalo on Plaintiff's unlawful taking claim and reserved decision on Plaintiffs' unreasonable seizure claim.

In a subsequent Decision and Order, dated April 30, 2024, the district court ordered that it would allow Plaintiffs' unreasonable seizure claim to proceed against the City of Buffalo because "questions of material fact" existed, specifically "whether City Defendants' invocation of the Commissioner's emergency condemnation and demolition authority to demolish the Building were warranted based on the condition of the Building and Property . . . ." Special App'x at 109. As a result, Plaintiffs' unlawful taking and unreasonable seizure claims against the City were permitted to proceed.

On March 4, 2025, the district court received supplemental briefing and reconsidered whether Plaintiffs' unlawful taking and unreasonable seizure claims could proceed against the City, given the magistrate judge's earlier, separate determination that Plaintiffs had not sufficiently alleged municipal liability. *See id.* at 117 (concluding that "Plaintiffs ha[d] adduced no evidence regarding the asserted demolitions amounting to an official policy or custom" (quoting the magistrate judge's Report and Recommendation)). After also determining that Plaintiffs failed to establish any viable municipal (*Monell*) liability claim against the City, the district court dismissed Plaintiffs' constitutional unlawful taking and unreasonable seizure claims in their entirety. *See id*. at 115–17, 120 (adopting the magistrate judge's finding).

---

Instead, the district court only discussed whether there was a genuine dispute of material fact as to whether Plaintiffs received adequate notice.

On appeal, Plaintiffs challenge the district court's grant of summary judgment against them on four of their Section 1983 claims and two additional claims under New York state law. Plaintiffs also challenge the district court's dismissal of their claims on qualified immunity grounds against the individual City Defendants; dismissal of their Section 1983 claims against Empire; and the ultimate dismissal of their claims against the City of Buffalo for lack of municipal liability.

For the reasons explained below, with respect to the procedural due process, unlawful taking, and unreasonable seizure claims, we conclude that summary judgment was unwarranted because there are questions of material fact as to whether the conditions of the property justified invoking the City's emergency demolition authority, which is a central issue underlying the resolution of each of those constitutional claims. In addition, because of the uncontroverted evidence demonstrating that Commissioner James Comerford, Jr., was the City's final policymaker with respect to the emergency demolition decision, the district court erred in granting summary judgment on the municipal liability claim due to a failure to show an official policy or custom. Moreover, given the disputed factual issues regarding whether the circumstances were sufficient to support an emergency demolition, the district court also erred in granting summary judgment to the Commissioner on the ground of qualified immunity with respect to the procedural due process, unlawful taking, and unreasonable seizure claims. Finally, we affirm the district court's grant of summary judgment in all other respects.

Accordingly, we AFFIRM in part, VACATE in part, and REMAND Plaintiffs' remaining claims to the district court for further proceedings consistent with this opinion.

## DISCUSSION

We review the district court's grant of summary judgment and decision to dismiss *de novo*. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). Summary judgment is appropriate when,

6

viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000);  Fed. R. Civ. P. 56(a).

**I.      Section 1983 Claims**

**A. Fourteenth Amendment Procedural Due Process Claim**

Plaintiffs argue that they were deprived of procedural due process in connection with the demolition of their building.  A review of a procedural due process claim involves a "two-step inquiry" in which we must determine "(1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process [] was due before [the plaintiff] could be deprived of that interest." *Ciambrello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).   While pre-deprivation hearings are normally required before an individual's property may be taken by the government, the Supreme Court has held that in emergency situations a city may satisfy procedural due process by making available "some meaningful means by which to assess the propriety of [its] action at some time after the initial taking." *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *see also WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) ("Where there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards.").

There is no dispute that Plaintiffs had a protected interest in the property that they owned.  The parties disagree, however, over whether procedural due process was satisfied.  The parties dispute whether there was a genuine factual dispute as to the condition of the Property, both as to drug use on it and as to its physical state, that justified an emergency demolition without a pre-deprivation hearing,

and whether Plaintiffs received constitutionally adequate notice of the remedies available to them.

The City Defendants had broad authority to declare an emergency demolition by virtue of the City Code and Charter, and in particular, where a building was "deem[ed] to be an immediate threat to the health, welfare and safety of the public." Supplemental App'x at 117; *see id.* at 119–20 (similar). As our circuit precedent recognizes, the Supreme Court directs us to accord deference to the decision to invoke the emergency procedure and not to engage in a hindsight analysis of whether the totality of the impairment to the property actually created an immediate danger to the public. *See Catanzaro v. Weiden*, 188 F.3d 56, 62 (2d Cir. 1999) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 302–03 (1981)). Under that deferential standard, "the due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." *Id.* In *Catanzaro*, we emphasized that we were not "suggest[ing] that the government may simply avoid affording due process to citizens by arbitrarily invoking emergency procedures"—rather, "where there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist, or that affording pre[-]deprivation process would be otherwise impractical, the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Id.* at 63.

Defendants argue that their authority to order an emergency demolition in this case derived from two conditions on the vacant property that created a safety concern for the neighborhood. The conditions were (1) illegal drug activity, which culminated in a late August overdose death on the Property where a needle was later found and (2) the building's "vacant, abandoned, and [] structural[ly] compromise[d]" state. Appellees' Br. at 6. We conclude that there are

disputed issues of material fact with respect to each part of this justification that preclude summary judgment on this critical question of whether the City abused its discretion in determining that an emergency demolition was warranted.

First, while our independent review of the record reveals more evidence of illegal drug activity than just the "one needle" that Plaintiffs indicate, Appellants' Brief at 41, the question is whether all the evidence concerning illegal drug activity, taken together, presented an "*immediate* threat to the health, welfare and safety of the public[,]" Supplemental App'x at 117 (emphasis added). In terms of evidence supporting the presence of illegal drug activity constituting an immediate threat, between March 2015 and July 2019, the City of Buffalo received at least seven complaints related to vagrants and drug use on the Property. In August 2019, the City received a police complaint about a drug overdose death on the Property. Shortly after this report, investigators found a used needle on the Property. But, in dispute of Defendants' argument about the immediacy of the threat, we note that approximately one month elapsed between the drug overdose death and the demolition of the Property in late September 2019. In further dispute of whether there was an immediate threat, as the Report and Recommendation noted, "there is no evidence in the record that after the overdose of a single drug user at the Property, there remained any public health risk based on drug use at the Property[.]" Special App'x at 50. More broadly, the record is devoid of evidence regarding the City's consideration of alternative measures short of demolition that could address any ongoing public safety risk created by continuing drug use on the Property pending a scheduled hearing, which was only three weeks away at the time of the demolition. Indeed, the Commissioner testified that, if it had been brought to his attention that there was a court proceeding or court hearing that was scheduled for a specific property, he "would [have] wait[ed] for the hearing" as opposed to moving forward with an emergency demolition. App'x at 245. In short, drawing all inferences in Plaintiffs' favor, we conclude that disputed factual issues preclude summary judgment for Defendants

as to whether the City's determination that drug activity at the Property warranted an emergency demolition ultimately "amount[ed] to an abuse of discretion." *Catanzaro*, 188 F.3d at 63.

The record, admittedly sparse, also presents conflicting evidence about whether the building was in imminent danger of collapse. Therefore, we also find that the structural integrity of the building was sufficiently disputed to preclude granting summary judgment as to the second part of the City's justification for ordering an emergency demolition.

Thus, summary judgment was inappropriate. The existence of an emergency is a "material fact . . . vigorously contested by the parties" because both justifications relied upon by the City remain in dispute. *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983).

Plaintiffs also challenge the efficacy of the notice they received from the City in advance of the demolition. We hold that the notice was sufficient. "[D]ue process requires only that a state take steps reasonably calculated to provide actual notice, not that the notice actually reach [the property owner] . . . before the government may take his property." *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 429 (2d Cir. 2011) (citation modified).

Defendants took reasonable steps to provide notice to Plaintiffs prior to the building's demolition. Defendants posted at the building notice of the pending demolition and sent this notice via certified and regular mail to the owners. The City's efforts at notice distinguish this case from those in which we found pre-deprivation notice insufficient. *See, e.g.*, *WWBITV*, 589 F.3d at 48 (plaintiffs learned of the demolition from a friend); *Burtnieks*, 716 F.2d at 984 (plaintiff learned about the demolition through her plumber). We therefore find no dispute of material fact as to the notice provided to Plaintiffs.

While the district court did address the question of notice, it did not address whether such notice, paired with the conditions on the Property, were such that Plaintiffs' procedural due process rights

10

were protected absent a pre-deprivation hearing. Without knowing whether the cited conditions of the Property warranted an emergency demolition, an issue that must be resolved at trial given the disputed factual issues discussed above, we are unable to conclude that "the government [was] relieved of its usual obligation to provide a hearing" and that the procedure afforded to Plaintiffs was adequate. *WWBITV, Inc.*, 589 F.3d at 50; *see also Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process.").

As a result, we vacate the district court's grant of summary judgment on Plaintiffs' procedural due process claim and remand it to the district court for further proceedings.[2]

## B. Fourteenth Amendment Substantive Due Process

We agree with the district court's grant of summary judgment for Defendants, and related denial of summary judgment for Plaintiffs, on Plaintiffs' substantive due process claim because it is derivative of Plaintiffs' more explicit constitutional claims. The Supreme Court has held that, in the Section 1983 context, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality) (citation modified). The rule announced in *Oliver* applies here because the

---

[2] We similarly conclude that the disputed issues of material fact on the procedural due process claim with respect to the Commissioner's invocation of the emergency demolition authority also preclude summary judgment with respect to the unlawful taking claim under the Fifth Amendment, as well as the unreasonable seizure claim under the Fourth Amendment.

11

crux of Plaintiffs' substantive due process claim is found in explicit textual sources: the Fourth and Fifth Amendments.

As a result, we affirm the district court's grant of summary judgment on Plaintiffs' substantive due process claim.

### C. Plaintiffs' Remaining Section 1983 Claims and *Monell* Liability

Apart from the questions of material fact precluding summary judgment on Plaintiffs' Fifth and Fourth Amendment claims, the district court granted summary judgment to the City and dismissed the case after determining that Plaintiffs failed to produce evidence to support a claim of municipal liability under *Monell*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The district court erred in doing so.

To establish municipal liability under *Monell*, a plaintiff "must first prove the existence of a municipal policy or custom" that caused his injuries and then "must establish a causal connection . . . between the policy and the deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985), *cert. denied*, 480 U.S. 916 (1987). A municipality can face liability "where that organization's . . . policies or customs that it has sanctioned [] led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *Monell*, 436 U.S. at 694 (involving a policy that was "the moving force of the constitutional violation").

Indeed, a single decision by a designated policymaker may be sufficient to establish the existence of municipal policy under *Monell*. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that "municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"); *see also Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005). "Where a city official 'has final authority over significant matters involving the

exercise of discretion,' his choices represent government policy." *Gronowski*, 424 F.3d at 296 (quoting *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983)).

Plaintiffs here established that Commissioner Comerford was a policymaker who had final, discretionary authority to order emergency demolitions in the City of Buffalo, a "significant matter" at the heart of Plaintiffs' various constitutional deprivation claims. *Id*. Plaintiffs' Complaint and Objection to the magistrate judge's Report and Recommendation allege facts that sufficiently establish the Commissioner as the "final policymaker" who invoked the emergency demolition procedure upon Plaintiffs' Property. *See* App'x at 18, 47–48 (noting the Commissioner was "responsible for setting, reviewing, and enforcing the policies and regulations of the City of Buffalo");[3] *id.* at 929–30 (describing the Commissioner as "a policymaker or [with] the power to make official policy in regard to demolition, and that a Constitutional violation occurred directly or indirectly from his command to survive a motion for summary judgment[]").

Further, "[a]n allegation of policy-making authority . . . requires proof of the official's scope of employment and his role within the municipal or corporate organization." *Rookard*, 710 F.2d at 45. The Commissioner's authority in this realm is clearly prescribed under the City of Buffalo's Code and Charter, which both parties reference throughout the record. Supplemental App'x at 117, 119–20 (City of Buffalo Code and Charter). Defendants' deposition testimony also supports the fact that the Commissioner was granted discretionary authority to make these emergency demolition decisions. *See*, *e.g.*, App'x at 210–11; *id.* at 132–33. This was sufficient

---

[3] With regard to the demolition of the Property, the Complaint states that the Commissioner was contacted by an inspector requesting emergency demolition, that he signed the Notice of Condemnation with Defendant Petrucci, and that he was authorized by the Buffalo Common Council to enter a contract for the demolition of the Property.

proof to support Plaintiffs' claim that the Commissioner was a final policymaker, thereby subjecting the City of Buffalo to *Monell* liability for his decision to order an emergency demolition of the Property in this case. As final policymaker, the Commissioner's decision to order an emergency demolition of Plaintiffs' Property directly led to its destruction and, therefore, a possible constitutional violation in the form of property seizure and taking.

We therefore vacate the district court's grant of summary judgment to Defendants on Plaintiffs' municipal liability claim. Similarly, Plaintiffs' Fifth Amendment unlawful taking and Fourth Amendment unreasonable seizure claims against the City are remanded to the district court for further consideration alongside Plaintiffs' procedural due process claim.

## D. Liability for Plaintiffs' Remaining Section 1983 Claims

The parties dispute which parties, if any, may be held liable for Plaintiffs' remaining Section 1983 claims. We agree that Empire was properly excluded from Section 1983 liability because Empire is a private actor, not a state actor, and its actions in this case did not amount to state action. With the exception of the Commissioner, we also agree with the district court's dismissal of all claims against the individual City Defendants on the grounds of qualified immunity. Thus, the case may proceed only against the City, for the reasons described above, and the Commissioner, for the reasons elaborated on below, with respect to Plaintiffs' remaining Section 1983 claims.

### a. Empire

Section 1983 permits civil liability against persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *see also Burtnieks*, 716 F.2d at 986. For the individual City Defendants and the City, with regard to the constitutional claims, "there is no question that the first prerequisite is met" and that the "conduct complained of [was] committed by a person acting under

14

color of state law[.]" *Burtnieks*, 716 F.2d at 986. The district court properly dismissed Plaintiffs' Section 1983 claims against Empire, however, because Empire acted as a private—not state—actor, and thus was not liable under Section 1983.

Empire was a private company and therefore presumptively not a state actor. A private entity, however, is not precluded from being held liable as a state actor. "[A] 'state action' occurs where the challenged action of a private party is 'fairly attributable' to the state." *Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1027 (2d Cir. 1995) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). This may occur when the private entity "is a state official, . . . [and] has acted together with or has obtained significant aid from state officials, or because [their] conduct is otherwise chargeable to the State." *Id*. "Characterizing a private party as a 'state actor' is a fact-specific inquiry," and we consider factors such as "the public function of the party's conduct, whether the private party acted under state compulsion, the nexus between the party's conduct and the state, and whether the party's conduct was jointly undertaken with the state." *Id.* (citing *Lugar*, 457 U.S. at 939).

We agree with the magistrate judge that "Empire's involvement was limited to the physical demolition of the [b]uilding on the Property on September [30], 2019, pursuant to a contract with the City that was awarded based on Empire's submission of the winning, *i.e.*, lowest, bid for demolition." Special App'x at 38. Empire played no role in deciding whether the demolition should take place. Given Empire's limited role in executing the challenged demolition, we agree with the district court's grant of summary judgment in favor of Empire on all of Plaintiffs' Section 1983 claims.

### b. Individual City Defendants

"In a § 1983 action, it is well-settled that qualified immunity shields a defendant from personal liability for damages so long as his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kaluczky v.*

*City of White Plains*, 57 F.3d 202, 207 (2d Cir. 1995) (citation modified). As discussed *supra*, at the time of the demolition, it was clearly established that, absent an emergency, procedural due process under the Fourteenth Amendment generally required a pre-deprivation hearing before a property right could be terminated. *See Hodel*, 452 U.S. at 298–300; *Parratt*, 451 U.S. at 539–40. Because Plaintiffs' Section 1983 claims are based on "clearly established" constitutional rights, qualified immunity protects the individual City Defendants from having to defend against Plaintiffs' claims only so long as "it was objectively reasonable for [them] to believe that [their] acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

With respect to the Commissioner, we conclude that he is not entitled to qualified immunity at the summary judgment stage because there are disputed factual issues regarding whether the circumstances were sufficient to constitute an emergency. These factual disputes also preclude a determination as to whether that decision by the Commissioner was objectively reasonable for purposes of qualified immunity.

However, we agree with the district court that Plaintiffs failed to develop an issue of material fact as to the objective reasonableness of the remaining individual City Defendants given the varying roles these different individuals played in gathering the relevant information pertaining to the Property as compared to the Commissioner's unique role in making the ultimate decision. In other words, the other individual City Defendants merely observed or inspected the Property at various points in time and reported their findings to the Commissioner, who then made the decision, based upon all the information that had been gathered over time, that the circumstances were sufficient to constitute an emergency that warranted demolition without a hearing. Under these circumstances, with respect the remaining individual City Defendants, it was objectively reasonable for them to believe that their limited participation did not violate Plaintiffs' constitutional rights.

*Kaminsky*, 929 F.2d at 925. Because we find their actions to be objectively reasonable under those circumstances, we affirm the district court's decision to grant qualified immunity to the individual City Defendants, other than the Commissioner, and to dismiss the claims against them.

**II.    New York Common Law Claims**

Finally, Plaintiffs reassert their New York common law claims against Empire for negligence and trespass. We agree with the district court's grant of summary judgment for Empire on these claims.

Plaintiffs' negligence claim fails because Plaintiffs "cannot establish that Empire breached any duty owed to Plaintiffs as required for a negligence claim[.]" App'x at 904. Plaintiffs' trespass claim also fails because Empire was "'licensed or privileged' to enter private premises when [Empire] obtained the consent of the owner or another whose relationship to the premises gives [them] authority to issue such consent." *People v. Graves*, 555 N.E.2d 268, 269 (N.Y. 1990). Empire may avoid liability for trespass here because the City, whom Empire contracted with, gave Empire permission to enter Plaintiffs' land.

For these reasons, we affirm the district court's grant of summary judgment to Empire on Plaintiffs' negligence and trespass claims.

*             *             *

We have considered the remaining arguments and find them without merit. For the foregoing reasons, the judgment of the district court is:

**AFFIRMED** in part as to:

- The district court's grant of summary judgment in favor of Empire for Plaintiffs' Section 1983 and state law claims;

17

- The district court's dismissal of all claims against the individual City Defendants, with the exception of the Commissioner, on qualified immunity grounds;
- The district court's grant of summary judgment on Plaintiffs' substantive due process claim;

**VACATED** in part as to:

- The district court's grant of summary judgment in favor of the City, and dismissal of the case in its entirety, after finding no *Monell* liability;
- The district court's grant of summary judgment in favor of the Commissioner on qualified immunity grounds;
- The district court's grant of summary judgment in favor of the City and Commissioner on Plaintiffs' procedural due process, unlawful taking, and unreasonable seizure claims; and

**REMANDED** to the district court for further proceedings consistent with this opinion.